UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO LOPEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SMITHS DETECTION, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 20-CV-1453 JLS (WVG)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 4) |

Presently before the Court is Defendant Smiths Detection, Inc.'s Motion to Dismiss Plaintiff's Complaint ("Mot.," ECF No. 4), as well as Plaintiff Alberto Lopez's Opposition thereto ("Opp'n," ECF No. 5) and Defendant's Reply in support thereof ("Reply," ECF No. 6). The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 7. Having carefully reviewed Plaintiff's Complaint ("Compl.," ECF No. 1-2), the Parties' arguments, and the law, the Court **DENIES** the Motion.

/ / /

/ / /

/ / /

/ / /

# BACKGROUND[1]

"[Defendant] manufactures, manages, and sells detection and screening technology for use in airports, ports and borders, urban security, and defense end use markets." Compl. ¶ 19. Defendant hired Plaintiff in 2012 as a Senior Sales Business Development Manager for Latin America. *See id.* ¶ 14. While employed by Defendant, Plaintiff received a base salary as well as "the opportunity to earn sales commissions." *Id.* Annually, Plaintiff and Defendant entered commission agreements that contained substantially similar terms year after year. *See id.* ¶ 15. On or around January 21, 2020, Plaintiff and Defendant entered into such an agreement covering the sales period from August 1, 2019, through July 31, 2020 (the "Commission Contract"). *See id.* ¶ 13; *see also generally* Compl. Ex. A.

As relevant to the present Motion, the Commission Contract provides that "Sales Commission Credits accrue to Employee upon a customer's order for Products having been Booked by [Defendant] during the Sales Period." Compl. Ex. A § 3.1.[2] Similarly, "Sales Commission Credits for a given Product order do not accrue to Employee unless and until the customer's order is Booked"; accordingly, if an order is not booked until "after the date of Employee's separation from [Defendant]," "no Sales Commission Credits will accrue to Employee and no Net Sales Commissions will be earned." *Id.* § 3.1.2.

///

---

[1] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the present Motion. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] As a general rule, a district court cannot rely on evidence outside the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.34[2] (3d ed.1999)). As the Commission Contract was attached as an exhibit to the Complaint and both parties relied to a significant extent on the Commission Contract's terms in their briefing on the Motion, the Court will consider the Commission Contract in ruling on the present Motion.

"Booked" is defined as:

> [T]he sales event that takes place when [Defendant] notifies the customer that [Defendant] has accepted the customer's order for Products and has entered the customer's order into [Defendant's] order entry system. For purposes of calculating Sales Commission Credits for Professional Services, "Booked" means the date on which [Defendant] accepts and enters the order for those Professional Services that have actually been rendered and accepted by the customer or third party.

*Id.* § 1.1. "Product" or "Products" is defined as "those SMITHS hardware and software products, Maintenance Services, Professional Services, and other services for which Employee is eligible to earn Sales Commissions Credits," and "Professional Services" is defined as "those services rendered by [Defendant's] internal professional services organization." *Id.*

Plaintiff's Commission Rates are set forth in the "FY 20 Employee Commission Target Schedule" (the "Target Schedule"), which provides that his Commission Rate is 1.0% for a booking of less than $6,000,000, his Commission Rate is 2.0% for bookings between $6,000,001 and $15,000,000, and his Commission Rate is 2.5% for bookings exceeding $15,000,000. *Id.* at Target Schedule. The Commission Contract indicates that, "if [Defendant] wishes to reduce any Commission Rate under this Plan, such Commission Rate reduction will be communicated in writing to the applicable Employee within seven (7) business days of acceptance by [Defendant] of the relevant customer purchase order." *Id.* § 3.4.4. "Additionally, [Defendant] shall not reduce any Commission Rate on any sale of Products where the gross margins on the sale exceed 35%." *Id.*

Moreover, "[Defendant] reserves the right to allocate, increase or decrease Gross Sales Commission Credits, as it deems appropriate in its sole discretion, under Special Circumstances." *Id.* § 3.7. The Commission Contract defines "Special Circumstances" to include "[o]ther circumstances as may reasonably be determined by [Defendant]." *Id.* § 3.7.5. "Where Special Circumstances exist, [Defendant] will inform Employee of the presence of such Special Circumstances and will inform Employee of the amount of Gross

Sales Commission Credits that Employee is eligible to receive at or prior to the date the customer's order is Booked." *Id.* § 3.7. "Gross Sales Commission Credits" is defined as "the total amount of Sales Commission Credits attributed to Employee for a specified period, prior to any adjustments being made and, thus, prior to being Earned by Employee." *Id.* § 1.1. "Sales Commission Credits" is defined as "the amount of commission credits attributed to Employee for each Booked Product order, calculated by multiplying the Net Sales Price of the Product Order by the designated Commission Rate for the applicable credit accumulation period . . . ." *Id.*

"Gross Sales Commission Credits that have accumulated are subject to cancellation and reversal by [Defendant] and / or offset against future Gross Sales Commission Credits" in a number of delineated circumstances, including if "the Product order or contract for which the Sales Commission Credits accumulated has been cancelled, reversed, reserved, or de-Booked based on returned Products, recalled Products, unpaid receivables, or contract breaches." *Id.* § 3.6.1.

Upon separation of employment, the Commission Contract "shall automatically terminate." *Id.* § 3.11. "Employee will not be entitled to accumulate any Sales Commission Credits or receive any Net Sales Commissions on Product orders that have not been Booked as of the date of separation of employment." *Id.* "Subject to any off-set rights [Defendant] may have under this Plan, [Defendant] may, in its sole discretion, accelerate the calculation of any Gross Sales Commission Credits accumulated up to and including the date of separation of employment and the payment of Net Sales Commissions." *Id.*

The Commission Contract "is subject to cancellation or modification at any time in the sole discretion of [Defendant]. No cancellation or modification shall be effective unless it is in writing and signed by [Defendant]. Notification of changes to the Plan shall be provided in writing to Employee." *Id.* § 3.12.

Beginning in or around March 2019, Plaintiff began "pursuing several high value sales opportunities that would result in hundreds of thousands of dollars in sales

commissions" with Grupo Aeroportuario del Pacifico ("GAP").  Compl. ¶¶ 21–22. Plaintiff was Defendant's main point of contact with GAP, communicating extensively with GAP, traveling to Mexico for meetings and to evaluate GAP's needs, and preparing cost and sales proposals. *See id.* ¶ 22.

On or around September 17, 2019, about six months into pursuing the GAP opportunity, Plaintiff received a letter from Stephen Esposito, Vice President of Sales & Business Development at Defendant. *See id.* ¶ 23. The letter indicated Defendant had determined a "special circumstance" applied to the GAP opportunity, and accordingly "[Plaintiff] would only be entitled to a 0.5% commission on particular projects within the GAP sales opportunity." *Id.* Several days after Plaintiff received this letter, Mr. Esposito telephoned Plaintiff to inform him "that a further, undisclosed reduction of commission would also be implemented," and that Defendant "could reduce and/or change a salesperson's commission 'at the company's discretion.'" *Id.* ¶ 24. Plaintiff subsequently contacted Mr. Esposito and informed him "that he felt the reduction in his commission percentage, and the policy that commissions could be reduced and/or changed at the company's discretion, was in breach of his Commission Contract." *Id.* ¶ 25.

In or around January 2020, Plaintiff informed Defendant that GAP was to award two airport contracts to Defendant. *See id.* ¶ 26. Plaintiff's commission potential on these contracts was "close to $450,000." *Id.* Shortly thereafter, "[Plaintiff] and [Defendant] revised the pricing and cost proposal provided to GAP to reflect the awarded bids," resulting in Defendant's gross margins on the contracts exceeding 35%. *Id.* ¶ 27.

In or around January or February 2020, Plaintiff spoke with his direct supervisor, Javier Rivera, "again object[ing] to the reduction in his commission rate" and conveying his view "that the Commission Contract precluded a reduction in commission when [Defendant's] gross margins exceeded 35%." *Id.* ¶ 28. Mr. Rivera assured Plaintiff Defendant would pay Plaintiff his full commission and abide by the Commission Contract. *See id.*

///

  Over the next several months, GAP and Defendant engaged in contract negotiations, with Plaintiff continuing to serve as the main point of contact. *See id.* ¶ 29. Defendant provided approval of the final contracts on or around March 31, 2020, executing them and sending them back to GAP. *See id.* ¶ 31. That same day, "the GAP order was 'booked' into [Defendant's] order entry system." *Id.* ¶ 32. On or around April 3, 2020, "[c]orrespondence from [Defendant] . . . confirmed that the GAP contracts were accepted as booked into [Defendant's] order entry system." *Id.*

  Plaintiff alleges on information and belief that GAP never canceled, modified, or otherwise indicated any intention to not proceed with the contracts. *See id.* ¶ 34. On or around April 9, 2020, however, Defendant informed Plaintiff "that, due to an error, the GAP contract was being placed in a 'holding pattern.'" *Id.* ¶ 35. Plaintiff alleges on information and belief that "[Defendant's] custom and practice dictate that a contract in a 'holding pattern' does not preclude payout of commissions to a sales person, nor does it mean that a sale is no longer 'booked.'" *Id.*

  On or around April 10, 2020, Mr. Esposito requested that Defendant's human resources department "'immediate[ly] terminat[e]'" Plaintiff "for 'consistently poor performance as a regional sales manager for the Latin America [] business." *Id.* ¶ 36. On or around April 15, 2020, Defendant's human resources department informed Plaintiff by telephone "that he was terminated effective immediately for 'not meeting performance expectations.'" *Id.* ¶ 37. However, "[a]t no point prior to [Plaintiff]'s termination was [Plaintiff] ever counseled, warned, written up, or provided with a performance improvement plan for his allegedly 'consistently poor performance.'" *Id.* ¶ 38. "In fact, [Plaintiff]'s performance reviews from [Defendant] for the duration of his employment were consistently positive." *Id.*

  Immediately after his termination, Plaintiff asked Defendant's human resources department when he would receive his commission payout on the GAP contracts. *See id.* ¶ 39. Defendant indicated Plaintiff would not receive any commissions on the GAP contracts "because the GAP contract was in a holding pattern, and allegedly no longer

1  'booked.'" *Id.* Plaintiff alleges that Defendant terminated Plaintiff in order to avoid paying
2  him the GAP commissions, and not due to poor performance. *See id.* ¶ 40–42.

3        Plaintiff filed this action in the Superior Court of California, County of San Diego,
4  on June 24, 2020. *See* ECF No. 1 ("Not. of Removal") at 1. Plaintiff's Complaint alleges
5  six claims: (1) wrongful termination in violation of public policy; (2) retaliation; (3) breach
6  of employment contract; (4) breach of the implied covenant of good faith and fair dealing;
7  (5) failure to pay wages upon termination; and (6) unlawful, unfair, and/or fraudulent
8  business practices. *See generally* Compl. On July 28, 2020, Defendant removed to this
9  District, based on diversity jurisdiction. *See generally* Not. of Removal. Defendant filed
10 the instant Motion on August 4, 2020. *See* ECF No. 4.

## LEGAL STANDARD

12       Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the
13 defense that the complaint "fail[s] to state a claim upon which relief can be granted,"
14 generally referred to as a motion to dismiss. The Court evaluates whether a complaint
15 states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil
16 Procedure 8(a), which requires a "short and plain statement of the claim showing that the
17 pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual
18 allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-
19 harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.
20 Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to
21 provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
22 conclusions, and a formulaic recitation of the elements of a cause of action will not do."
23 *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A
24 complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual
25 enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

26       To survive a motion to dismiss, "a complaint must contain sufficient factual matter,
27 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting
28 *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible

when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendant argues that Plaintiff has failed to state a claim as to each of his six asserted claims. *See generally* Mot. Accordingly, the Court will address each claim in turn.

### I.  Wrongful Termination in Violation of Public Policy

"Wrongful termination in violation of public policy is a California common law cause of action providing that 'when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions.'" *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012) (citing *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980); *Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003)). "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the

discharge caused the plaintiff harm." *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014) (citing *Haney v. Aramark Uniform Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004)). "The public policy implicated must be (1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental." *Ferretti*, 855 F. Supp. 2d at 1024 (quoting *Freund,* 347 F.3d at 758) (internal quotation marks omitted).

Plaintiff pleads an employer-employee relationship, *see* Compl. ¶¶ 14, 46, and the termination of his employment, *see id.* ¶¶ 37, 47. Plaintiff alleges that one "substantial motivating reason" for his termination was "[Defendant's] desire to avoid the full and prompt payment of [Plaintiff's] wages," despite it being "a violation of California public policy to discharge an employee to avoid paying that employee earned commissions and/or other wages." *Id.* ¶¶ 44–48. Plaintiff further alleges that another "substantial motivating reason" for his termination was his pre-termination complaints about his belief that Defendant was unlawfully withholding his wages, violating the "broad public policy interest in encouraging workplace whistleblowers to report unlawful acts without fearing retaliation" set out in California Labor Code § 1102.5. *Id.* ¶¶ 49–52. Finally, Plaintiff alleges that his termination caused his harm. *Id.* ¶ 53.

However, Defendant asserts that, because Plaintiff's retaliation, failure to pay wages upon termination, and breach of contract claims allegedly fail, so too does his wrongful termination claim. Mot. at 6 (citing *Jennings v. Marralle*, 8 Cal. 4th 121, 135–36 (1994); *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351 (9th Cir. 1996)). Defendant claims it violated no public policy because the GAP commissions were not "earned," and Plaintiff only voiced his grievances after he was terminated. *Id.* at 7. Defendant further claims that "Plaintiff has alleged no facts falling into any of the[] four categories [of public policy violations in wrongful termination cases that] the Supreme Court identified" in *Gantt v.*
///
///

*Sentry Ins. Co.*, 1 Cal. 4th 1083, 1090–91 (1998), *overruled on other grounds by Green v. Ralee Engineering Co.*, 19 Cal. 4th 66 (1998). Mot. at 7.[3]

Plaintiff argues that each of the two factual bases for his claim is adequately pleaded. First, Plaintiff argues that his claim is substantively similar to that at issue in *Gould v. Maryland Sound Industries, Incorporated*, 31 Cal. App. 4th 1137, *as modified* (Feb. 9, 1995), where the Court of Appeal held that a claim that an employer fired the plaintiff to avoid paying commissions earned adequately pleaded a wrongful termination claim, and that wrongful termination claims are "not strictly limited" to the situations identified by Defendant. *Id.* at 13–14 (citing *Gould*, 31 Cal. App. 4th at 1147) (emphasis omitted). Second, because Plaintiff adequately pleads his retaliation claim and that he was terminated in violation of § 1102.5, Plaintiff's wrongful termination claim is also sound. *Id.* at 16.

The Court agrees with Plaintiff. For the reasons provided *infra* at 14–15, the Court has found that Plaintiff has pleaded adequately that his commissions were "booked" and therefore earned, and accordingly the Court has determined that Plaintiff satisfactorily has alleged claims for retaliation and failure to pay wages, *see infra* at 12–14, 18. Accordingly, Plaintiff has alleged a potential violation of public policy sufficient to ground his claim.[4]

---

[3] On reply, Defendant argues that Plaintiff's claim is further defective because the Complaint alleges Plaintiff "was terminated for 'consistently poor performance,'" and therefore his termination was not wrongful as it was not premised on an illegitimate factor. Reply at 7–8 (citing Compl. ¶ 36; *Greta v. Surfun Enter.*, No. 09-CV-2793 JLS (NLS), 2013 WL 12204908, at *3 (S.D. Cal. May 17, 2013)). However, "'[a]rguments raised for the first time in a reply brief are waived.'" *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) (quoting *Turtle Island Restoration Network v. U.S. Dep't of Commerce,* 672 F.3d 1160, 1166 n.8 (9th Cir. 2012)). Nonetheless, even overlooking this issue, Plaintiff clearly alleges that he had never previously had a poor performance review, Compl. ¶ 38, and that "poor performance" was a pretext so that Defendant could avoid paying his commission, *id.* ¶¶ 41–42, 47–48. Thus, taking these allegations as true, as the Court must on Defendant's Motion, Plaintiff has pleaded wrongful termination premised on an illegitimate factor.

[4] Even had the Court found the allegations supporting these claims defective, however, that does not mean that the wrongful termination in violation of public policy claim would necessarily fail. *See, e.g.*, *Freund v. Nycomed Amersham*, 347 F.3d 752, 759 (9th Cir. 2003) ("As long as the employee makes the health or safety complaint in good faith, it does not matter for purposes of a wrongful termination action whether the complaint identifies an actual violation of other workplace safety statutes or regulations. Nycomed's

Specifically, courts have routinely determined that the timely payment of wages is a fundamental public policy of the State of California, and that a plaintiff alleging he or she was fired to avoid payment of commissions, vacation time, or other wages states a claim for wrongful termination in violation of public policy. *See, e.g.*, *Gould*, 31 Cal. App. 4th at 1147–48 ("[W]e conclude if MSI discharged Gould in order to avoid paying him the commissions, vacation pay, and other amounts he had earned, it violated a fundamental public policy of this state."); *McCullough v. Lennar Corp.*, No. 09CV1808-WQH-NLS, 2009 WL 3805305, at *4–5 (S.D. Cal. Nov. 10, 2009) (denying motion to dismiss wrongful termination in violation of public policy claim where plaintiff alleged he was terminated in part to avoid paying a performance incentive); *Sinclair v. Servicemaster Co.*, No. CIV 07-0611 FCD/DAD, 2007 WL 2254448, at *4 (E.D. Cal. Aug. 3, 2007) (rejecting argument "that plaintiff's allegations are insufficient to state a claim for wrongful termination in violation of public policy because a private contractual dispute between an employer and employee does not rise to the level of a fundamental public policy" and concluding, "to the extent plaintiff alleges his termination was intended to avoid payment of his accrued vacation time, his claim for wrongful termination in violation of public policy is valid").

Likewise, courts have found repeatedly that California has a fundamental public policy supporting the reporting of unlawful conduct to employers, and accordingly courts have determined time and again that a plaintiff states a claim for wrongful termination when he or she alleges that she was discharged in retaliation for such reports. *See, e.g.*, *Gould*, 31 Cal. App. 4th at 1150 ("[W]e conclude if MSI discharged Gould in retaliation for his reporting violations of the overtime wage law to MSI management, it violated a fundamental public policy of this state."); *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563, 571 (1998), *as modified* (Apr. 24, 1998) ("[I]s there a fundamental public

---

argument would add a requirement that California law simply does not support.") (citation omitted); *Banko v. Apple, Inc.*, No. 13-02977 RS, 2013 WL 6623913, at *4 (N.D. Cal. Dec. 16, 2013) (concluding "that Banko's failure to state a claim under a particular statute (*e.g.*, Dodd–Frank) does not preclude him from relying on that statute's policies for purposes of his wrongful termination claim").

policy against an employer's retaliation for its employee having asserted a right to be free from the employer's withholding of pay, as alleged to have occurred in this case? We conclude there is such a fundamental public policy."); *Wood v. Igate Techs., Inc.*, No. 3:15-CV-00799 JSW, 2015 WL 13345325, at *5 (N.D. Cal. Aug. 11, 2015) ("California cases have recognized that wrongful termination in contravention of public policy occurs when the employee is terminated for reporting to the employer about existing unlawful conduct.").

Accordingly, the Court concludes Plaintiff has adequately alleged a claim for wrongful termination in violation of public policy and **DENIES** the Motion as to this claim.

## II. Retaliation (Cal. Lab. Code § 1102.5)

California's "whistleblower" retaliation statute provides, in relevant part:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . .

Cal. Lab. Code § 1102.5(b).

"In order to plead a prima facie case of retaliation, a plaintiff must show that she engaged in a protected activity, her employer subjected her to an adverse employment action, and there is a causal link between the protected action and the adverse action." *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1148 (S.D. Cal. 2018) (citing *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005)). Furthermore, "[t]he employee must have an actual belief that the employer's actions were unlawful and the employee's belief, even if mistaken, must be reasonable." *Id.* (citing *Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 933–34 (2007)).

///

Defendant claims that Plaintiff's retaliation claim fails because Plaintiff (1) does not, and cannot, allege that he engaged in any protected activity and (2) does not allege that he exhausted his administrative remedies by filing a claim with the California Labor Commissioner. Mot. at 5–6. Plaintiff counters that the Complaint does allege that he engaged in protected activity—namely, "opposing [Defendant's] unilateral reduction of his commission rate after he had worked for more than six months toward securing the GAP contract, in violation of the Commission Contract." Opp'n at 9. Plaintiff alleges that he engaged in this protected activity by complaining to both Mr. Esposito and Mr. Rivera about the reduction prior to his termination. *Id.* at 10 (citing Compl. ¶¶ 25, 28). Plaintiff argues that, given that California law requires commission rates to be set by contract before work is performed, he plausibly could have believed that Defendant's unilateral reduction of his commission rate six months into his work on the GAP account was illegal. *Id.* at 11 (citing Cal. Labor Code § 2751). Further, Plaintiff argues that there is no exhaustion requirement. *Id.* at 12 (citing Cal. Labor Code §§ 244, 1102.5). On reply, Defendant argues that "[a] modification provision in a commission plan, such as the one at issue, is not restricted by Labor Code § 2751(a), other statutes, or case law." Reply at 6. Furthermore, Plaintiff signed onto commission contracts containing substantially similar terms each of his eight years working for Defendant, thereby "ratif[ying]" it. *Id.* (citing Compl. ¶ 15).

As an initial matter, Plaintiff is correct that, per the plain terms of the California Labor Code, no exhaustion requirement applies to § 1102.5 claims, as several notable treatises concisely state. *See, e.g.*, The Rutter Group, Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 13(V)-A § 13:928 ("Pursuant to Lab.C. § 244(a), '[a]n individual is not required to exhaust administrative remedies or procedures in order to bring a civil action' under the Labor Code, 'unless that section under which the action is brought expressly requires exhaustion of an administrative remedy.' Section 1102.5 contains no such express requirement.").

///

Having found Plaintiff's claim does not fail for failure to plead exhaustion, the Court finds that Plaintiff adequately pleads a claim for whistleblower retaliation. Plaintiff pleads that he opposed Defendant's alleged wage theft, a violation of California law, by complaining to both Mr. Esposito and Mr. Rivera prior to his termination. *See* Compl. ¶¶ 25, 28, 57. Defendant may renew its objections to whether or not the complained of activity was, in fact, illegal later in these proceedings; however, at this stage in the proceedings, the argument is premature. Further, Plaintiff alleges he was subject to adverse employment action by having his wages withheld and being wrongfully terminated. *See id.* ¶ 58. Finally, Plaintiff alleges that his complaints to Mr. Esposito and Mr. Rivera "w[ere] a contributing factor" in his wrongful termination, thereby establishing a nexus between the protected activity and the adverse employment action. *Id.* ¶ 59. Accordingly, Plaintiff has alleged satisfactorily the basic elements of his claim, and the Court **DENIES** the Motion as to this claim.

### III. Breach of Employment Contract

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968)). Plaintiff adequately alleges the existence of the contract, *see* Compl. ¶ 67, and performance, *see id.* ¶ 68. Based on their competing interpretations of the term "booked," however, the Parties dispute whether the Complaint alleges a breach.

Defendant argues that Plaintiff fails to plead a claim for breach of contract "because the express terms of the Commission [Contract] contradicts the allegations in the Complaint." Mot. at 7. Specifically, Defendant argues that the definition of "booked" requires that the customer be notified both (1) that its order was accepted and (2) that the order was placed into Defendant's order entry system. *Id.* at 8. Because GAP was not notified that its order was placed in the order entry system, GAP's order was not "booked," Plaintiff did not earn any commissions, and accordingly Plaintiff cannot assert a breach of

contract. *See id.* Plaintiff, on the other hand, argues that the definition of "booked" requires the Defendant to (1) notify the customer that Defendant has accepted the order and (2) enter the order into its order entry system. Opp'n at 14. Because the Complaint alleges that the order was entered in Defendant's system and that GAP was notified that Defendant had accepted its order, Plaintiff argues his allegations are adequate to state a claim. *Id.* at 15.

Plaintiff's interpretation of the term "booked" is both plausible and reasonable. At best, Defendant introduces an ambiguity in raising a competing interpretation. Thus, given the posture of this case, the Court finds Plaintiff has adequately pleaded that the GAP contract was "booked" and that he accordingly was entitled to his commission; thus, Plaintiff adequately alleges that, in not paying the commission and by reducing his commission, Defendant breached the Commission Contract. *See* Compl. ¶¶ 69–70; *see, e.g.*, *Aragon-Haas v. Family Sec. Ins. Servs., Inc.*, 231 Cal. App. 3d 232, 239 (1991) ("So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.") (citing *Marina Tenants Ass'n v. Deauville Marina Development Co.*, 181 Cal. App. 3d 122, 128 (1986)).

On reply, Defendant argues that Plaintiff further fails to state a claim because he was not damaged. Reply at 4. Essentially, Defendant claims that Plaintiff would have had to pay back his commission when the GAP contract was placed "on hold," and accordingly, Plaintiff has not been injured. *See id.* (citing Compl. Ex. A §§ 3.5, 3.6). But again, taking as true the allegations in Plaintiff's Complaint, Defendant's custom and practice was that a contract in a "holding pattern" did not preclude the payout of commissions and did not render a contract "no longer 'booked.'" Compl. ¶ 35. Thus, the Court cannot conclude as a matter of law that Plaintiff would have had to pay back his commission on the GAP contract. Accordingly, the Complaint adequately alleges resultant damage, *see id.* ¶ 71, and therefore Plaintiff states a claim for breach of contract. Thus, the Court **DENIES** the Motion as to this claim.

### IV. Breach of the Implied Covenant of Good Faith and Fair Dealing

"Under California law, . . . all contracts contain an implied covenant of good faith and fair dealing. This covenant 'requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" *San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co.*, 723 F.2d 700, 703 (9th Cir. 1984) (citations omitted).

Defendant argues that, because Plaintiff's claim for breach of the implied covenant of good faith and fair dealing "is based on the alleged breach of the Commission [Contract]," Mot. at 9, it is "superfluous" and should be "disregarded," *id.* at 8 (citations omitted). Further, because Plaintiff's breach of contract claim allegedly fails to state a claim, Defendant asserts that this claim fails as a matter of law. *Id.* at 9. In response, as an initial matter, Plaintiff again argues that his breach of contract claim is adequately pleaded, "and therefore so too is the corresponding breach of the implied covenant claim." Opp'n at 16. Moreover, Plaintiff argues that, in order to avoid paying Plaintiff the commissions he had fairly earned, "[Defendant] sought to interject into the Commission Contract a provision that a 'holding pattern' means no commissions are paid" and then "fired [Plaintiff] so as to rely on the contractual provision that no commissions can be earned if not booked before termination," clearly frustrating Plaintiff's right to receive the benefits of his agreement. *Id.* at 17–18 (citation omitted). Separately, Plaintiff contends that Defendant acted in bad faith by unilaterally exercising its discretionary power and declaring that a "special circumstance," never explained to Plaintiff, warranted reducing the commission rate to 0.5%. *Id.* at 18 (citing Compl. ¶ 23).

Having found that Plaintiff adequately pleads a claim for breach of contract, *see supra* at 14–15, the Court rejects Defendant's argument that this claim must fail with the breach of contract claim.[5] As Plaintiff alleges that "[Defendant] unfairly interfered with

---

[5] At any rate, this argument appears contrary to prevailing law. *See, e.g.*, *Fed. Ins. Co. v. Dencity, Inc.*, No. SACV071458DOCRNBX, 2008 WL 11342969, at *3 (C.D. Cal. June 5, 2008) ("[Although] the covenant is limited to assuring compliance with the express terms of the contract and cannot be used to

[Plaintiff]'s right to receive the benefits of the contract by, *inter alia*, refusing to pay [Plaintiff]'s commissions earned, unilaterally reducing [Plaintiff]'s commission rate in breach of the Commission Contract, and wrongfully terminating [Plaintiff] to avoid paying [Plaintiff] commissions owed under the Commission Contract," Compl. ¶ 76, and that Plaintiff was harmed as a direct result, *see id.* ¶ 77; *Fed. Ins. Co.*, 2008 WL 11342969, at *4 (denying motion to dismiss claim for breach of covenant of good faith and fair dealing where the alleged damages "can be found to be within the contemplation of the parties at the time of performance"), Plaintiff has pleaded sufficiently his claim. *Accord Wood v. Igate Techs., Inc.*, No. 3:15-CV-00799 JSW, 2015 WL 13345325, at *4 (N.D. Cal. Aug. 11, 2015) (denying motion to dismiss where "Plaintiff sufficiently alleges that Defendant breached the covenant of good faith and fair dealing by terminating her employment to cheat her out of receiving her earned commissions that she was promised and entitled to receive."). Nor, as pleaded, is the claim superfluous.[6] *See Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004) ("Plaintiffs allege that Defendants' actions breached the contract. If not, the actions, allegedly taken in bad faith, frustrated the *actual* benefits of the contract. The breach of the covenant of good faith and fair dealing claim, therefore, is not superfluous.") (citation omitted). Accordingly, the Court **DENIES** the Motion as to this claim.

///

---

create additional obligations not contemplated in the contract, . . . it is not necessary that an express term be breached before the covenant is implicated. Where one party is given discretion under the terms of a contract and does not act in an objectively reasonable manner, the covenant of good faith and fair dealing can be implicated.") (citing *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 796 (1998)).

[6] Even assuming the claim were duplicative of the breach of contract claim, the Court would not dismiss the claim on that basis at this stage in the litigation. *See, e.g.*, *Lett v. Paymentech, Inc.*, 81 F. Supp. 2d 992, 1002 (N.D. Cal. 1999) (denying motion to dismiss allegedly duplicative claim for breach of the covenant of good faith and fair dealing, reasoning: "The Court agrees with Lett that within the ambit of Rule 12 it is premature to foreclose avenues of relief, even where the relief sought might ultimately prove duplicative. For the Court to intervene and foreclose potential avenues of relief is not within the purview of Rule 12, which focuses the Court's efforts on the plaintiff's ability to state a legally viable claim, not its ultimate viability relative to a plaintiff's other claims.").

### V.  Failure to Pay Wages Upon Termination (Cal. Lab. Code §§ 201–03)

"If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). "If an employer willfully fails to pay . . . any wages of an employee who is discharged . . . , the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Id.* § 203(a). "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." *Id.* § 200(a).

Defendant argues that because Plaintiff's breach of contract claim is allegedly defective, Defendant had no duty to pay Plaintiff the commissions in question, and therefore this claim must be dismissed. Mot. at 9. Plaintiff counters that, because he has established that the GAP contract was "booked," and therefore his commissions were earned, before his termination, he has adequately pleaded this claim. Opp'n at 16.

Plaintiff alleges he was due wages—*i.e.*, his commission payment—on the date he was terminated, *see* Compl. ¶¶ 41–42, 82, and that "[Defendant] failed to pay, and continues to fail to pay," those wages, *id.* ¶ 83. For the reasons provided *supra* at 14–15, the Court has found that the Complaint adequately pleads a claim for breach of contract, and thus wages allegedly due. Accordingly, the Court finds Plaintiff has pleaded a claim for failure to pay wages and **DENIES** the Motion as to this claim.

### VI.  Unlawful, Unfair, and/or Fraudulent Business Practices (Cal. Bus. & Prof. Code § 17200 *et seq.*)

Finally, Plaintiff brings a claim under § 17200 of the California Business & Professions Code (the "UCL") for unlawful, unfair, and/or fraudulent business practices. Defendant claims that, because the breach of contract and retaliation claims allegedly are inadequately pleaded, this derivative claim, which "adds nothing new" and "simply makes a conclusory allegation sans particularity," is also defective and must be dismissed. Mot. at 9. Plaintiff counters that Defendant's argument is premised on its erroneous

interpretation of the term "booked," and because Plaintiff has adequately pleaded his other claims, this claim is likewise sound. Opp'n at 16.

"As to the 'unlawful' prong, the UCL prohibits 'unlawful' practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.' The UCL 'thus creates an independent action when a business practice violates some other law.'" *Johnson v. Sunrise Senior Living Mgmt., Inc.*, No. CV1600443BRORAOX, 2016 WL 8929249, at *14–15 (C.D. Cal. May 5, 2016) (quoting *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838 (1994); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002)). The Court has found, as explained *supra*, that Plaintiff has adequately pleaded claims for various violations of state law. Thus, because Plaintiff satisfactorily has pleaded that Defendant violated the law, Plaintiff adequately states a claim under the "unlawful" prong. *See, e.g.*, *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1073 (S.D. Cal. 2018) ("Based on the foregoing, Plaintiff plausibly alleges that Defendant's conduct or practices violates the [California Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et seq.*], and therefore, Plaintiff plausibly alleges a UCL claim.").

As to the "unfair" prong, "[a]lthough '[t]he standard for determining what business acts are "unfair" in consumer actions under the UCL is currently unsettled,' the alleged 'unfair' conduct must be 'tethered to a violation of a constitutional, statutory or regulatory provision." *Johnson v. Sunrise Senior Living Mgmt., Inc.*, No. CV1600443BRORAOX, 2016 WL 8929249, at *14–15 (C.D. Cal. May 5, 2016) (quoting *Zhang v. Superior Court*, 57 Cal. 4th 364, 380 n.9 (2013); *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 613 (2014)). "'Unfair' means any practice whose harm to the victim outweighs its benefits." *McCullough v. Lennar Corp.*, No. 09CV1808-AJB(NLS), 2011 WL 1585017, at *20 (S.D. Cal. Apr. 26, 2011) (citing *Olsen v. Breeze, Inc.,* 48 Cal. App. 4th 608, 618 (1996)). Given that the Court has determined, as set forth *supra*, that Plaintiff has alleged various violations of California statutes, including California Labor Code §§ 201–03 and 1102.5, and Plaintiff alleges that "[t]he harm to [Plaintiff] resulting from Defendant's violations of

19
20-CV-1453 JLS (WVG)

California law as identified herein far outweighs whatever benefits, if any, such business practices have for Defendant," Compl. ¶ 91, Plaintiff adequately states a claim under the "unfair" prong.

Given that Defendant raises no arguments specific to the "fraudulent" prong and Plaintiff has pleaded adequately a UCL claim for at least unlawful and unfair business practices, the Court **DENIES** the Motion as to this claim.

## CONCLUSION

In light of the foregoing, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**

Dated: January 25, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge